UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRITTA LOUISE PUPPE, *as trustee for the next of kin of Randall Puppe*,

    Plaintiff,

v.

AMETEK, INC., M&S MANUFACTURING CO., HILCO INDUSTRIAL LLC, MID-MICHIGAN MACHINERY SALES, INC., BIRD MACHINE COMPANY, and BAKER HUGHES, INC.,

    Defendants.

**Memorandum of Law & Order**
Civ. No. 10-3888 (MJD/JJK)

Lucas V. Cragg and Scott A. Teplinsky, Katz, Manka, Teplinsky, Graves & Sobol, Ltd., Counsel for Plaintiff Britta Louise Puppe.

Sarah E. Roeder and Charles T. Hvass, Donna Law Firm, P.C., Counsel for Defendant Mid-Michigan Machinery Sales, Inc.

## I.    Introduction

This matter is before the Court on Plaintiff Britta Louise Puppe's Motion for Default Judgment [Docket No. 209] and Defendant Mid-Michigan Machinery Sales, Inc.'s Motion to Vacate Default and for Leave to File Answer [Docket No. 216] and Motion for Summary Judgment [Docket No. 220]. The Court heard oral argument on June 15, 2012.

1

## II. Background

Although this case at one point involved many parties, through a series of voluntary dismissals, only one defendant—Mid-Michigan Machinery Sales, Inc. ("Mid-Michigan")—remains. The following factual and procedural background pertains to the dispute between Plaintiff and Mid-Michigan.

### A. Factual Background

Plaintiff's husband, Randall Puppe, tragically perished in a workplace accident. He was crushed to death while using a "chip wringer" device while working at TCR Engineered Components, LLC ("TCR") in Minneapolis, Minnesota. A chip wringer is a centrifuge used to separate oil from scrap metal. The chip wringer at issue in this case contains a four foot drum containing an inner basket. A worker using the chip wringer would fill a basket with oil-coated scrap metal and lower and lock an inner lid on the basket. The worker would then lower an outer lid by pressing an actuator lever to the down position. The lever did not require constant pressure to lower the outer lid; it could be accidently bumped and the lid would close without further physical contact with the lever. Periodically, a worker would need to clean remnant metal

chips out of the basket by leaning into the wringer and removing the chips with a shovel.

Randall Puppe was found dead, crushed between the lid and the outer edge of the chip ringer, on August 14, 2007.  His body was found leaning over the lid actuator lever, which was in the down (lid-closed) position.  Investigators determined that he had accidently bumped the actuator lever while leaning into the wringer, inadvertently closing the lid.

The chip wringer in question appears to have been manufactured in 1942 by Ametek, Inc.  The record indicates that Mid-Michigan purchased the machine at an auction.  Mid-Michigan cleaned, painted, and tested the machine before selling it to TCR.  It appears that several components were altered on the machine after TCR bought it.

**B.     Procedural History**

In January 2008, Plaintiff originally contacted Mid-Michigan and other defendants by letter, explaining that it represented the interests of Randall Puppe and giving notice of potential claims against the defendants.  The letter requested that Mid-Michigan provide information about the chain of manufacture and distribution of the chip wringer involved in Randall Puppe's death.  In response

3

to Plaintiff's letter, attorney Richard N. LaFlamme replied on behalf of Mid-Michigan on January 24, 2008. LaFlamme provided some information about the chain of distribution, requested that Plaintiff provide additional information about the accident, and stated that Plaintiff should "direct future communications regarding [the] matter to [LaFlamme]."

Plaintiff filed this case against numerous Defendants in state court in August 2010. Plaintiff served Mid-Michigan with its complaint on August 27, 2010. Mid-Michigan does not allege that the notice was insufficient or that it did not have actual notice of the suit. The other defendants removed the action to this Court. In July 2011, Plaintiff served Mid-Michigan with a number of documents, including the complaint, the notice of removal, Plaintiff's interrogatories to Mid-Michigan's owner and sole shareholder, David L. Olds, and Plaintiff's request for production of documents. Having received no answer or other response from Mid-Michigan, Plaintiff's attorney sent emails to LaFlamme, requesting that Olds provide information regarding insurance coverage and noting that Mid-Michigan had not responded to the complaint. On August 1, 2011, LaFlamme responded that Olds "will appear at the [deposition] but he's not going to prepare answers to the discovery request. [And] [h]e is not

going to defend the case because Mid-Michigan has ceased operations and has no assets except some unsold inventory and scrap."

In response to LaFlamme's email, Plaintiff's attorney explained that he had "little choice but to proceed with default judgment." LaFlamme replied that "[w]hether you take a default makes no difference to my client, since he is not going to defend the case." In the same email, LaFlamme conveyed Olds's willingness to appear for a deposition "rather than spend money to have [LaFlamme] file formal responses to your written requests." Olds did appear for a deposition, but LaFlamme never entered a notice of appearance in this case.

In October 2011, Plaintiff filed an application for entry of default against Mid-Michigan [Docket No. 104], noting that Mid-Michigan's responsive pleadings were overdue and that Mid-Michigan had not yet made an appearance before this Court. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered default as to Mid-Michigan on October 12, 2011. [Docket No. 108.] In November 16, 2011, Attorney LaFlamme sent an email to Plaintiff's counsel stating, in full, "I no longer represent Mr. Olds or his company, as I am no longer practicing law." On November 18, 2011 Plaintiff's attorney received a telephone call from different attorney, Bob Kendall, from the Marcoux Allen firm in

Jackson, Michigan. Kendall told Plaintiff's attorney that he was now representing Mid-Michigan, and Plaintiff's attorney told Kendall about the entry of default against Mid-Michigan.

According to Mid-Michigan's owner, Olds, he brought Plaintiff's complaint to LaFlamme and believed that LaFlamme was "handling this case for the company." (Olds Aff. [Docket No. 217] ¶ 4.) He states that, after the entry of default by the Clerk in this case, LaFlamme's law firm notified him that they "were no longer handling the case." (Id. ¶ 5.) He states that he retained his current counsel, Donna Law Firm, when he "realized that none of the attorneys in Michigan were able to represent Mid-Michigan in the Minnesota court." (Id. ¶ 6.)

New counsel for Mid-Michigan—attorneys from Donna Law Firm—entered an appearance before this Court on March 13, 2012. [Docket No. 199.] On March 27, 2012, Plaintiff moved for default judgment against Mid-Michigan. [Docket No. 209.] On April 7, 2012, Mid-Michigan responded with a motion to vacate the default and for leave to file an answer to Plaintiff's complaint. [Docket No. 216.] On the same day, Mid-Michigan filed a motion for summary judgment. [Docket No. 220.] Those three motions are now before the Court.

6

## III. Discussion

### A. Default

#### 1. Standard

The parties do not dispute that Plaintiff was entitled to the Clerk's entry of default in October 2011. The question before the Court is whether the Court should now enter a default judgment against Mid-Michigan pursuant to Federal Rule of Civil Procedure 55(b)(2) or whether the Clerk's entry default should be set aside pursuant to Rule 55(c).

Rule 55(c) provides that the Court may set aside an entry of default "for good cause." This is a less stringent standard than that required to set aside a default <u>judgment</u> under Rule 60(b), though "the same factors are typically relevant in deciding whether to set aside entries of default and default judgments." Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). It is particularly appropriate to apply a less stringent standard to cases where a defendant has made an appearance <u>before</u> a default judgment since "there is a judicial preference for adjudication on the merits," and "it is likely that a party who promptly attacks an entry of default, rather than waiting for a grant of a

default judgment, was guilty of an oversight and wishes to defend the case on the merits." Id. at 784 (citation omitted).

In assessing whether there is good cause to set aside an entry of default, the Court examines "[1] whether the conduct of the defaulting party was blameworthy or culpable, [2] whether the defaulting party has a meritorious defense, and [3] whether the other party would be prejudiced if the default were excused." Id. In doing so, the Court "should take account of all relevant circumstances surrounding the party's omission." Union Pac. R.R. Co. v. Progress Rail Servs., 256 F.3d 781, 782 (8th Cir. 2001) (citation omitted). "The inquiry is essentially an equitable one, and the district court is required to engage in a careful balancing" of the above considerations. Id. The Court must also keep in mind that "[t]he entry of default judgment is not favored by the law and should be a rare judicial act." Jones Truck Lines, Inc. v. Fosters Truck & Equip. Sales, Inc., 63 F.3d 685, 688 (8th Cir. 1995) (quotation and citation omitted).

   2. **Good Cause**

Although the Court has not yet entered a default judgment in this case, both parties ignore the proper and more lenient standard (whether there is "good cause" under Rule 55(c) to set aside the clerk's entry of default), and instead

focus their arguments on Rule 60(b)'s more stringent standard for relief from a final judgment.

Mid-Michigan argues that its delay in responding to Plaintiff's complaint should be excused due to the fact that Olds, Mid-Michigan's owner and sole shareholder believed that his attorney was handling the matter when, in fact, he was not. Olds further notes that, as soon as he became aware of the entry of default by the Clerk and that his attorney was <u>not</u> handling the case, he sought counsel who would represent the company in the matter. Mid-Michigan's new counsel shortly thereafter entered an appearance, filed an opposition to Plaintiff's motion for default judgment, and moved to vacate the Clerk's entry of default. All of this has occurred <u>before</u> the Court's entry of a final default judgment in this case. Olds appears to have been cooperative in the litigation and agreed to appear for a deposition in this case.

Plaintiff argues that emails from Mid-Michigan's first attorney provide a sufficient basis on which to deny Mid-Michigan's motion to vacate the entry of default and for this Court to now grant default judgment in Plaintiff's favor. In support Plaintiff cites <u>Robinson v. Armontrout</u>, 8 F.3d 6, 7 (8th Cir. 1993), a case applying the Rule 60(b) standard to a district court's refusal to reconsider a

denial of habeas petition, where <u>final judgment</u> had been entered over two years prior to the Rule 60(b) motion.  <u>Robinson</u> could not be less applicable to this case.  Other cases cited by Plaintiff in support of the proposition that Mid-Michigan's delay dooms it to default judgment are similarly inapposite.  <u>See</u> <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 633 (1962) (affirming dismissal for failure to prosecute where plaintiff failed to file even a Rule 60(b) motion); <u>Sutherland v. ITT Cont'l Baking Co., Inc.</u>, 710 F.2d 473, 476 (8th Cir. 1983) (affirming denial of Rule 60(b) motion where case was dismissed after plaintiff and his attorney did not appear for trial); <u>Cline v. Hoogland</u>, 518 F.2d 776, 778 (8th Cir. 1975) (affirming denial of Rule 60(b) motion to reconsider and noting "this is not a case where [a party] has been denied a decision on the merits").

Even if the Court were inclined to find Mid-Michigan blameworthy or culpable for its delayed response to this litigation, the other two factors relevant here—the merits of Mid-Michigan's defense and the potential prejudice to Plaintiff by additional delay—tip in Mid-Michigan's favor.  While summary judgment may not be appropriate at the moment, the Court notes that Mid-Michigan has presented a relatively strong argument against its liability for Randall Puppe's death.  Moreover, while the prejudice that Mid-Michigan would

suffer upon a default judgment is obvious, Plaintiff has not explained how she would be prejudiced if the Court allowed the case to proceed on the merits.

For all of these reasons, the Court will deny Plaintiff's motion for default judgment against Mid-Michigan and grant Mid-Michigan's motion to vacate the Clerk's entry of default.

**B.      Summary Judgment**

**1.  Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no genuine dispute as to any material fact. Id. at 323. Summary judgment is appropriate only when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that

11

are irrelevant or unnecessary will not be counted." Id. "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

### 2. Minn. Stat. § 544.41

Minn. Stat. § 544.41, known as the seller's exception statute, limits the strict liability of a passive distributor in a products liability case. This statute "tempers the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a viable source." In re Shigellosis Litigation, 647 N.W. 2d 1, 6 (Minn. Ct. App. 2002). The statute achieves this goal by requiring the dismissal of strict liability claims against non-manufacturers under certain situations. The statute provides in part:

> **Subdivision 1. Product liability; requirements.** In any product liability action based in whole or in part on strict liability in tort commenced or maintained against a defendant other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death, or damage. . . .
>
> **Subdivision 2. Certifying defendant; dismissal of strict liability.** Once the plaintiff has filed a complaint against a manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order dismissal of a strict liability in tort

claim against the certifying defendant, provided the certifying defendant is not within the categories set forth in subdivision 3. Due diligence shall be exercised by the certifying defendant in providing the plaintiff with the correct identity of the manufacturer and due diligence shall be exercised by the plaintiff in filing a law suit and obtaining jurisdiction over the manufacturer.

Minn. Stat. § 544.41.

The statute prohibits dismissal of a defendant if the plaintiff can show:

(a) that the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death, or damage;

(b) that the defendant had actual knowledge of the defect in the product which caused the injury, death, or damage; or

(c) that the defendant created the defect in the product which caused the injury, death, or damage.

Minn. Stat. § 544.41, subdiv. 3. Additionally, the statute provides that a plaintiff may move to vacate a dismissal order and reinstate a certifying defendant when the plaintiff can show one of the following:

(c) that the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this state, or despite due diligence, the manufacturer is not amenable to service of process;

(d) that the manufacturer is unable to satisfy any judgment as determined by the court; or

> (e) . . . that the manufacturer would be unable to satisfy a reasonable settlement or other agreement with plaintiff.

Minn. Stat. § 544.41, subdiv. 2.

### 3. Mid-Michigan's Liability

Mid-Michigan argues that it is entitled to summary judgment under Minn. Stat. § 544.41 because Ametek, Inc., not Mid-Michigan, originally manufactured the chip wringer at issue in this case, and Mid-Michigan did not make any modifications to the machine apart from cleaning and painting it. Mid-Michigan further asserts that Plaintiff has not produced evidence sufficient to show that the machine was defective at the time of sale, noting that the evidence indicates that TCR, Randall Puppe's employer, made alterations to the machine after it was purchased from Mid-Michigan. Mid-Michigan also notes that Plaintiff has not submitted the expert evidence on causation required to hold Mid-Michigan liable for Randall Puppe's death.

Mid-Michigan asks the Court to grant summary judgment in its favor before it has filed an answer to Plaintiff's complaint, before it has filed the certification required under § 544.41, and before Plaintiff has had an opportunity to evaluate or respond to such filings. It would be unreasonable to expect Plaintiff to have built a case against Mid-Michigan during the time that Mid-

Michigan has refused to participate in the litigation. The Court therefore concludes that Mid-Michigan's motion for summary judgment is premature. The Court will refer this matter to the Magistrate Judge to amend the Pretrial Scheduling Order to allow for reasonable additional discovery as to Mid-Michigan's liability in this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED** that:

1) Plaintiff Britta Louise Puppe's Motion for Default Judgment [Docket No. 209] is **DENIED**;

2) Defendant Mid-Michigan Machinery Sales, Inc.'s Motion to Vacate Default and for Leave to File Answer [Docket No. 216] is **GRANTED** and its Motion for Summary Judgment [Docket No. 220] is **DENIED** without prejudice; and

3) this matter is referred to the Magistrate Judge to amend the Pretrial Scheduling Order to allow for reasonable additional discovery as to Mid-Michigan's liability in this case.


Dated: September 6, 2012    s/ Michael J. Davis
                            Michael J. Davis
                            Chief Judge
                            United States District Court